65 F.3d 168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY
COMPANY, Plaintiff-Appellee,
v.
C & P MANAGEMENT, INC., Defendant-Appellant.
 No. 94-5692.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1995.
 
 Before: MARTIN, GUY and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, C & P Management, Inc., appeals to this court from the denial of its motion for judgment as a matter of law. C & P Management renewed its motion after a jury verdict and judgment in favor of the Cincinnati, New Orleans, and Texas Pacific Railway Co., ordering C & P Management to indemnify the railroad company for damages paid to a former employee injured in a railway dormitory accident. C & P Management contends that the district court, sitting in diversity, erred in not giving requested jury instructions, in not holding the indemnification agreement violative of statutory law and public policy, and in not granting C & P Management's motion for judgment as a matter of law. For the reasons set out below, we conclude that the district court should be affirmed.
 
 
 2
 The Cincinnati, New Orleans & Texas Pacific Railway Co., an Ohio corporation with its principal place of business outside of Tennessee, is a subsidiary of the former Southern Railway Company and operates a railroad that runs through the Tennessee city of Oakdale. In 1979, C & P Management, formerly a Tennessee corporation, contracted with Southern Regional Industrial Realty, Inc., another Southern Railway Company subsidiary, to operate and manage a dormitory in Oakdale to provide on-the-job housing accommodations for the railroad's employees. Pursuant to Paragraph 10 of the contract, the parties agreed as follows:
 
 
 3
 Contractor [C & P Management] will indemnify and save [CNO & TP Railway] harmless from and against any and all loss of or damage to any property of [C & P Management] located upon said premises of [CNO & TP Railway] which may be caused by fire, whether set out by locomotive engines or trains operating on tracks in the vicinity of said dormitory facility, or otherwise; and furthermore, against any and all claims, demands, suits, judgments or sums of money accruing for any loss, injury or damage of whatever nature, which may be caused by or result from any act, negligence or default of any employee while in or about said premises of [CNO & TP Railway] or dormitory facility, and from and against injury to or death of Contractor [C & P Management] or his invitees while in or about the premises of said dormitory facility.
 
 
 4
 While this contract was in force, William Ray Thompson, Jr., an employee of the railroad company, injured his knee when a loose stairway tread caused him to fall down the stairs in the dormitory. Thompson then filed suit against both the railroad and C & P Management pursuant to the Federal Employers Liability Act, 45 U.S.C. Secs. 51 et seq., alleging that the railroad and the management company negligently failed to provide a safe workplace and safe sleeping quarters. C & P Management was eventually dismissed voluntarily from the suit, however. After a bench trial, the district court found in favor of Thompson and ruled that he was entitled to receive $316,760 in damages from the railroad company.
 
 
 5
 As a result, the railroad company filed this indemnity action against C & P Management, contending that the provisions of Paragraph 10 of the parties' contract required the defendant to reimburse the railroad for its expenditures connected with the defense of the suit prosecuted by Thompson. The district court determined that the contractual indemnification provision was vague and ambiguous, however, and submitted special interrogatories to the jury directing the jury to decide whether the contract required the railroad to establish negligence on the part of an employee of C & P Management before being indemnified. The jury responded that such negligence was not a contractual precondition for indemnification. As a result, the court entered judgment against the defendant in the amount of $322,809.40, covering the damages paid to Thompson and attorney's fees incurred by the railroad company in defending the FELA action.
 
 
 6
 On appeal, C & P Management first insists that, in the absence of conflicting parol evidence, an interpretation of ambiguous provisions of a contract presents a question of law to be decided by a court, not by a jury. Because the district court concluded that Paragraph 10 of the contract at issue in this case was vague and ambiguous, and because no parol evidence on the intent of the parties in drafting the contract was offered, C & P Management submits that the jury should not have been given the special interrogatories prepared by the court. Instead, the defendant claims, the court itself should have determined the meaning of the contract provision at issue in this matter.
 
 
 7
 The district court explained, however, that it would have interpreted the allegedly ambiguous contract terms in the same manner as did the jury. Consequently, even if the court did err in submitting the interpretation of the contractual provisions to the jury, that decision could not have affected the outcome of the case. Any such error is, therefore, harmless.
 
 
 8
 C & P Management next argues that the interpretation of the contractual provisions in the railroad's favor was erroneous. The management company insists that the railroad was required to establish proximate negligence in order to be indemnified. Consequently, the management company submits that the jury should have been instructed to apportion fault for Thompson's injuries among C & P Management, the railroad company, and Thompson himself, in accordance with the principles of comparative fault adopted by the Tennessee Supreme Court in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn.1992).
 
 
 9
 We reject C & P Management's contention that its own negligence must be established before it is liable for indemnification under the contract is incorrect. We reach this determination principally because we conclude that there is no ambiguity in the terms of the contract and that the defendant's liability for Thompson's injury is clear.
 
 
 10
 Paragraph 10 of the contract between the parties actually sets out two separate conditions for indemnification by the defendant for personal injuries. First, C & P Management contractually agreed to indemnify the railroad for injuries "which may be caused by or result from any act, negligence or default of any employee while in or about [the railroad premises or the] dormitory facility." It is this provision which the management company argues calls for proof of negligence on the part of a C & P employee. The contract also provides, however, that C & P Management will, without further stipulations, indemnify the railroad for personal injuries suffered in the dormitory by C & P itself or by its invitees. Unlike the first promise to indemnify the railroad for acts of negligence by C & P employees, the latter agreement makes no mention of the necessity of establishing negligence as a prerequisite for indemnification. Consequently, if injury to an invitee of C & P Management can be shown to have occurred in the dormitory, the management company is contractually bound to indemnify the railroad for any damage payments made by the railroad in connection with that injury. There is no dispute that Thompson was an invitee at the time of his injury, or that the injury occurred in the dormitory. We therefore hold that C & P Management was clearly and unambiguously liable to indemnify the railroad for expenditures incurred as a result of Thompson's FELA judgment.
 
 
 11
 Our ruling on the nature and scope of the defendant's liability under terms of the contract renders moot two other issues raised on appeal. Because the railroad company did not need to establish negligence on the part of a C & P employee in order to be indemnified for the damages paid to Thompson as a result of the FELA litigation, there was no error in failing to instruct the jury on Tennessee's comparative fault doctrine. Similarly, the finding of contractual indemnification liability makes irrelevant any dispute concerning either party's relative negligence in causing Thompson's injury.
 
 
 12
 In a final issue, C & P Management contends that giving effect to the contractual indemnity provision involved in this dispute violates the public policy enunciated in Tenn.Code Ann. Sec. 62-6-123, which provides:
 
 
 13
 A covenant promise, agreement or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against public policy and is void and unenforceable.
 
 
 14
 Although Tenn.Code Ann. Sec. 62-6-123 was passed as part of the Tennessee Contractors Licensing Act of 1976, Tenn.Code Ann. Secs. 62-6-101 et seq., the appellate courts of Tennessee have construed the section to apply not only to agreements involving general contractors, but to any contract relating to the construction, alteration, repair, or maintenance of a building. See, e.g., Elliot Crane Serv., Inc. v. H.G. Hill Stores, Inc., 840 S.W.2d 376, 379-80 (Tenn.App.1992) (statute's application not limited to contracting activities); Carroum v. Dover Elevator Co., 806 S.W.2d 777, 779-80 (Tenn.App.1990) (language of statute not limited solely to construction contracts). Thus, the indemnification agreement at issue here, involving a contract for maintenance of a railroad dormitory, arguably is governed by the proscriptions of Tenn.Code Ann. Sec. 62-6-123.
 
 
 15
 As recognized by the district court, however, indemnification contracts are voided by the public policy expressed in Tenn.Code Ann. Sec. 62-6-123 only when such agreements call for indemnification for injury or damage "caused by or resulting from the sole negligence of the promisee." (Emphasis added.) In this case, there is no contention made by C & P Management that Thompson's injury was caused only by the negligence of the railroad company. In fact, in the pretrial order signed by counsel for the management company, the district court noted that C & P Management, besides denying its own liability for damages, "avers that [Thompson] may have also been guilty of proximate negligence in not paying proper attention as he descended the stairway, in not keeping a proper lookout or hand hold, and in not exercising due care for his own safety." Because the railroad's sole negligence cannot be established in this matter, the district court properly ruled that the provisions of Tenn.Code Ann. Sec. 62-6-123 are inapplicable to this case.
 
 
 16
 For the reasons set out above, we AFFIRM the judgment of the district court.