**ELLIOTT CRANE SERVICE, INC. and Chris Elliott, Plaintiffs/Appellants,**

v.

**H.G. HILL STORES, INC., Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 29, 1992.

Application for Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

Keene W. Bartley, Schulman, LeRoy & Bennett, P.C., Nashville, for plaintiffs/appellants.

John P. Branham, John J. Britton, Mary M. Bers, Howell, Fisher & Branham, Nashville, for defendant/appellee.

## OPINION

TODD, Presiding Judge.

The plaintiffs, Elliott Crane Service, Inc., and Chris Elliott, have appealed from the non-jury judgment of the Trial Court dismissing their suit against the defendant, H.G. Hill Stores, Inc., for declaratory judgment in regard to the rights of the parties under an equipment rental-indemnity agreement.

On December 8, 1987, a crane owned by Elliott Crane Service, Inc., and operated by its employee, Chris Elliott, was engaged in an operation on the premises of defendant when one of defendant's employees was injured, and he has sued plaintiffs for damages.

On August 24, 1989, this suit was filed alleging a rental agreement between Elliott Crane Service, Inc., and defendant containing the following provision:

2. INDEMNIFICATION: Lessee agrees that the equipment and all persons operating such equipment, including Lessor's employees, are under Lessee's exclusive jurisdiction, supervision and control and agrees to indemnify and save lessor, its employees and agents harmless from all claims for death or injury to persons, including Lessor's employees, and from all loss, damage or injury to property, including the equipment, arising in any manner out of Lessee's operation. Lessee's duty to indemnity hereunder shall include all costs or expenses arising out of all claims specified herein, including all court and/or arbitration costs, filing fees, attorneys fees and costs of settlement.

Lessee shall not be required to indemnify Lessor for its sole negligence, but, Lessor's liability for damage caused by the sole negligence of Lessor, its agents and employees, hereunder shall be limited to the amount of Lessor's liability insurance.

The complaint further alleged that the injured employee had sued plaintiffs for damages and prayed that:

2. That the court, upon a hearing, enter a declaratory judgment requiring Hills to indemnify and hold harmless Elliott Crane and Chris Elliott for any injuries occurring to Eddie L. Beard during the course of the crane rental occurring on December 8, 1987.

The answer admitted that defendant rented a crane from Elliott Crane Service, Inc. on December 8, 1987; that Chris Elliott was the operator of that crane, that the signature on the rental agreement appeared to be that of an employee of defendant, denied any liability for indemnity, denied any control over the operator of the crane or liability for his actions, and affirmatively pled T.C.A. § 28–3–104, the statute of limitations for personal injury.

Upon hearing the cause, the Trial Court entered judgment stating:

At the close of the plaintiffs' proof, the defendant moved the Court, pursuant to Rule 41.02, T.R.C.P., to dismiss the plaintiffs' case based upon T.C.A. § 62–6–123 and Hill Stores' lack of bargaining upon and assent to the terms of the alleged agreement sought to be enforced by the plaintiffs.

After listening to the argument of counsel and reviewing the record as a whole, the Court was of the opinion that the defendant's motion was well taken and should be granted because the alleged agreement sought to be enforced by the plaintiffs was against public policy, void and unenforceable, and violated T.C.A. § 62–6–123. Accordingly,

It is ORDERED, ADJUDGED and DECREED that the defendant's motion to amend its answer to rely upon T.C.A. § 62–6–123 is hereby granted.

. . . .

It is FURTHER ORDERED, ADJUDGED and DECREED that the defendant's motion to dismiss at the close of the plaintiffs' proof pursuant to Rule 41.-02, T.R.C.P., is hereby granted and the plaintiffs' case is dismissed with prejudice.

It is FURTHER ORDERED, ADJUDGED and DECREED that the findings of the Court are incorporated herein by reference.

The Trial Court did not file a written finding of facts and conclusion of law, but the Trial Clerk has certified to this Court an unsigned, unauthenticated transcript of "Findings of the Court" which states:

On review of the motion under Rule 41.52 of the Tennessee Rules of Civil Procedure the court finds that the indemnification agreement found in the contract .02, designated Exhibit 1 in the record, falls within provisions of 62–6–123; and therefore, the, indemnification

agreement is against public policy or it's void and unenforceable. Having so found the court finds it unnecessary to consider the other ground raised in the motion to dismiss. . . .

On appeal, plaintiff presents the following issues for review:

I. Did the Trial Court err in granting the motion to dismiss under Rule 41.02 based upon the facts before the Court?

II. Did the Trial Court err in finding that the indemnity agreement sought to be enforced in the present matter contained in the short term crane rental contract of Elliott Crane Service, Inc. was an agreement in violation of T.C.A. § 62–6–123 rendering said agreement void as a matter of law?

III. Did the result reached by the Trial Court cause an inconsistent status to exist between the defendants Chris Elliott and Elliott Crane Service, Inc. in light of application of the fellow servant rule?

T.C.A. § 62–6–123 reads as follows:

**Indemnify or hold harmless agreement invalid.**—A covenant promise, agreement or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against public policy and is void and unenforceable.

The quoted statute is part of Chapter 6 of Title 62 of Tennessee Code Annotated, which chapter is designated as "The Contractor's Licensing Act of 1976."

With the exception of Section 62–6–123, quoted above, every other section of Chapter 6 deals with the licensing of contractors. It is noteworthy that neither the word contractor or contracting is mentioned in Section 62–6–123, which appears to stand alone without dependence upon any other section of the chapter. The instruments declared void and unenforceable are not designated contracts, but "covenant, promise, agreement or understanding."

■ Plaintiffs insist that § 62–6–123 was not intended to apply to situations such as the present case, but was intended to apply only to architects and/or engineers. The section was enacted as Chapter 225 of the Public Acts of 1967 entitled, "An Act declaring the invalidity of certain indemnity or hold harmless agreements in the construction industry." The pertinent text of the Act, quoted above, is clear and unambiguous and needs no recourse to legislative debate to determine legislative intent. Where the legislative intent has been clearly stated in a legislative act, that intent cannot be limited or modified by any oral expression during debate.

■ Plaintiffs insist that Elliott Crane Service, Inc., is not a contractor, and is not subject to § 62–6–123. It is uncontroverted that plaintiff corporation is in the business of owning cranes which it uses to furnish crane service to the general public including the construction industry. It is also uncontroverted that the operation out of which the present controversy arose consisted of the removal of air conditioning equipment from the roof of a building as a part of remodeling of the building.

The indemnity agreement was printed on the reverse side of a charge ticket representing the rental of a crane and operator to defendant. The face of the charge ticket contained the details of the charge, including time and charge per hour, and the signature of an employee of defendant to verify the length of time for which charges were due. As stated in *American Pecco Corp. v. Concrete Building Systems, Co.,* U.S.D.C.Ill.1975, 392 F.Supp. 789,

The crane was designed to be used in construction activities. Central cannot logically claim it was unaware of the use to which the crane would be put, when

the crane was in fact put to a designed use.

392 F.Supp. at 793.

Elliott Crane Service, Inc. is not shown to be a "contractor" engaged in "contracting" within the contemplation of the other provisions of "The Contractor's Licensing Act of 1976." However, the evidence is clear that there was a contract or agreement (the charge ticket) between Elliott and defendant "relative to the alteration, repair or maintenance of a building, structure or appliance, including moving connected therewith." It is equally clear that the indemnity agreement was "in or in connection with or collateral to" the rental contract.

This Court is satisfied that the indemnity contract in the present case is void as being within the contemplation of T.C.A. § 62–6–123.

Moreover, exclusive of the statute, the effectiveness of indemnity contracts exonerating the negligent party has been sharply limited by several decisions.

In *Eades v. Union Ry. Co.*, U.S.C.A.Tenn.1968, 396 F.2d 798, cert. den., *Union Ry. Co. v. Swift & Co.*, 393 U.S. 1020, 89 S.Ct. 626, 21 L.Ed.2d 564 (1968) it was held that, under Tennessee law, clear and unambiguous language is required if a contractual provision is to be regarded as indemnifying against the indemnitee's own negligence.

In *Brogdon v. Southern Ry. Co.*, U.S.C.A.Tenn.1967, 384 F.2d 220, it was held that indemnity agreements should not be extended to indemnify the indemnitee's own negligence unless the language clearly so provides.

In *Crum v. Colman–Cocker Textile Machinery Co.*, U.S.D.C.Tenn.1978, 467 F.Supp. 6, it was held that a contract of indemnity cannot be construed under the law of Tennessee to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms or unless no other meaning can be ascribed to it. Also said authority holds that general, broad and seemingly all inclusive language in an indemnity agreement is not sufficient

under the law of Tennessee to impose liability for indemnitee's own negligence.

In *Georgia Kraft Co. v. Terminal Transport Co.*, U.S.D.C.Tenn.1972, 343 F.Supp. 1240, it was held that clear and unambiguous language must exist in a contract before an obligation to indemnify a party against the consequence of its own negligence may be found.

■ Plaintiff asserts that the indemnity agreement excludes from its provisions the "sole" negligence of Elliott Crane Service, and is therefore not subject to the authorities above cited. However, this exclusion of liability for sole negligence is emasculated by the subsequent language:

> but Lessor's liability for damages caused by the sole negligence of Lessor, its agents or employees hereunder, shall be limited to the amount of Lessor's liability insurance.

The uncontroverted evidence is that Elliott was not protected by any liability insurance.

■ There is another ground, not invoked by the Trial Judge, upon which plaintiffs' suit must fail. The uncontroverted evidence is that the employee of defendant who signed the charge ticket had no authority to bind defendant to an indemnity agreement. This Court sustains this defense in addition to the defense of T.C.A. § 62–6–123.

■ Plaintiffs insist that, apart from the indemnity agreement, they are entitled to relief under the "loaned servant theory."

In *Gaston v. Sharpe*, 179 Tenn. 609, 168 S.W.2d 784 (1943), the Supreme Court held that, in fixing liability for the negligence of a "loaned servant," the criterion should be whether, in performing the negligent act, the employee was performing the business of his employer, the owner of the leased machine or that of the lessee. In the cited case, the employer was acting under the specific direction of the lessee to "let out some slack in the line." In the present case, the injury occurred because the boom of the crane contacted a high voltage conductor. Chris Elliott, the operator of the crane testified:

Q. Who was in charge of the safety responsibilities for operating that crane?

A. I think that's a joint responsibility to me.

Q. Now, if the customer had told you to do something that you knew was unsafe, would you have done it?

A. No, sir.

Q. You would have overridden the customer and told him no, I won't do that?

A. Exactly.

Q. Didn't you have ultimate responsibility for the safe operation of that crane?

. . . .

THE WITNESS: When it comes to the ultimate responsibility, yes, sir. I'm the ultimately responsible.

Q. And you had the authority to override anything that the customer wanted that you didn't think was right?

A. Right.

Q. You've been sued in Circuit Court over the accident that happened that day, and they have alleged that you were negligent by getting this crane either into or too close to the power lines and causing this accident; isn't that correct?

A. That's correct.

Q. That's what you've been sued about?

A. Yes.

The foregoing uncontradicted testimony establishes that the operator had a direct duty to his employer to keep the crane clear of any dangerous electrical conductors, that his operation and control of the crane in this respect was within his duties to his employer and that the defendant had no authority or power to order him to do anything contrary to that duty. There is no evidence in this record that the movement of the crane which produced the contact with the electrical conductor was in response to any signal, request or command of any employee of defendant. It must be concluded, therefore, that the negligent act of the crane operator in contacting the high voltage was within the business of his employer, the owner of the crane, who should be liable under the "loaned servant rule."

Plaintiffs assert, correctly, that, in *Gaston v. Sharpe*, the owner of the drag line was relieved of responsibility. However, the evidence in that case was that the injury resulted from a negligent release of a cable on the specific order of the lessee.

In *Richardson v. Russom Crane Rental Co.*, Tenn.App.1975, 543 S.W.2d 590, the lessee was held liable because the lessee specifically ordered the crane operator to unload a quantity of pipes without assistance of riggers.

In yet another, unpublished opinion appended to plaintiffs' brief, the crane operator was attempting to perform a movement ordered by the instructions of the lessee which he, the operator, apparently misunderstood.

In *Acuff v. Commissioner*, Tenn.App. 1977, 554 S.W.2d 627, this Court affirmed a civil penalty against a crane operator for violating a state regulation against operating in proximity to high voltage despite the existence of the relationship of loaned servant. This Court recognized the importance of preserving the public policy of the State in requiring crane operators to avoid high voltage.

The evidence in this record indicates that the instructions from defendant's employees to the operator of the crane were limited to the desired result, i.e. lifting an object from the roof to the ground; and the placement of the crane and movement of its boom were left entirely to the expert control of the operator. Under the facts of this case and under the rule announced in *Gaston v. Sharpe*, the Tennessee loaned servant rule places the responsibility for negligent movement of the crane or its boom upon the owner and operator of the crane.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiffs. The cause is remanded to the Trial Court for collection of its costs and for any other necessary proceedings.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.