IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 1999 Session

## DENNIS ARMONEIT v. ELLIOTT CRANE SERVICE, INC., ET AL.

Appeal from the Circuit Court for Davidson County
No. 97C-232     Hamilton V. Gayden, Jr., Judge

---

No. M1998-00988-COA-R3-CV
Filed July 10, 2001

---

This appeal arises from an accident involving a crane rented by the plaintiff's employer to aid in a construction project. The plaintiff was helping to attach trusses being lifted by the crane to the roof of a house when the crane's allegedly negligent operation caused him to fall from the roof. The plaintiff filed suit against the owner of the crane in the Circuit Court for Davidson County, alleging that the owner was vicariously liable for the crane operator's actions. The owner of the crane, relying on its standard rental agreement form, sought indemnity from the plaintiff's employer. On the plaintiff's employer's motion for partial summary judgment, the trial court held that the owner of the crane was vicariously liable for the crane operator's alleged negligence and that the indemnity agreement was void as contrary to public policy. The owner of the crane has appealed. We hold that the trial court erred by granting partial summary judgment on the employer's respondeat superior claim but that the trial court properly determined that the indemnity provision in the crane owner's rental agreement is void.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Daniel J. Ripper, Chattanooga, Tennessee, for the appellant, Elliott Crane Service, Inc.

Sean Antone Hunt, Nashville, Tennessee, for the intervenors, Fox Ridge Homes, Inc.

J. Mitchell Grissim, Jr. and John P. Sheahan, Jr., Nashville, Tennessee, for the appellee, Dennis Armoneit.

Sarah Hardison, Nashville, Tennessee, for the intervenors, Continental Casualty Company.

**OPINION**

Fox Ridge Homes, Inc. ("Fox Ridge") is a general contractor with the overall responsibility for constructing the homes in the River Glen subdivision in Madison. Fox Ridge subcontracted framing work to Alvin Fritscher, d/b/a Superior Framing. Because Mr. Fritscher did not carry

workers' compensation insurance, Fox Ridge provided workers' compensation insurance for Mr. Fritscher's employees who were working on the homes at River Glen and withheld the premiums from its periodic payments to Mr. Fritscher. Dennis Armoneit was one of Mr. Fritscher's employees performing framing work at River Glen.

In early February 1996, Joe Hollingsworth, Fox Ridge's construction manager, requested Elliott Crane Service, Inc. ("Elliott Crane") to provide a crane and operator to assist in setting prefabricated roof trusses on two houses that were under construction. On February 9, 1996, Ronnie Solley, the crane operator, and the crane arrived on the site. Mr. Fritscher signed Elliott Crane's standard rental agreement ostensibly on behalf of Fox Ridge. The agreement provided that the lessee exclusively controlled the crane's operator and that the lessee would indemnify Elliott Crane against claims arising from the crane's operation. The contract also stated that the lessee need not indemnify Elliott Crane for Elliott Crane's "sole negligence, but, [Elliott Crane's] liability for damage caused by the sole negligence of [Elliott Crane], . . . shall be limited to the amount of [Elliott Crane's] liability insurance."

Mr. Solley was the only person operating the crane. However, Mr. Fritscher and his employees gave Mr. Solley directions concerning where and how to move the trusses. Mr. Armoneit was one of the workers standing on top of the partially framed houses who were responsible for attaching the roof trusses after Mr. Solley lifted them into place with the crane. Mr. Armoneit alleges that Mr. Solley negligently lifted one of the trusses in such a way that he feared that the truss would strike him and that he fell off the roof while attempting to avoid being struck. Mr. Armoneit fractured both of his ankles in his fall from the roof.

In January 1997, Mr. Armoneit filed a negligence suit against Elliott Crane in the Circuit Court for Davidson County. Elliott Crane thereafter filed a third-party claim against Fox Ridge based on the indemnity clause in its rental agreement. After the trial court permitted Fox Ridge to intervene in the proceeding, Fox Ridge asserted that it was entitled to a subrogation lien against any recovery that Mr. Armoneit might receive from Elliott Crane based on the workers' compensation payments that Mr. Armoneit had received.

In October 1998, the trial court granted Fox Ridge a partial summary judgment on two issues. First, the court held as a matter of law that Mr. Solley was Elliott Crane's employee, not Fox Ridge's loaned servant, when the accident involving Mr. Armoneit occurred. Accordingly, the trial court held that Elliott Crane was vicariously liable for the negligence, if any, of Mr. Solley. Second, the trial court held that the indemnity provision in Elliott Crane's standard rental agreement was void under Tenn. Code Ann. § 62-6-123 (1997). Thereafter, both the trial court and this court granted Elliott Crane's application for an interlocutory appeal in accordance with Tenn. R. App. P. 9.

This appeal presents three issues. The first issue is whether the trial court erred by granting a summary judgment holding Elliott Crane vicariously liable for Mr. Solley's alleged negligence under the doctrine of respondeat superior. We hold that it did. The second issue is whether our comparative fault regime mandates a holding of vicarious liability in this case. We hold that it does not. The third issue is whether the trial court correctly invalidated the indemnity provision in Elliott Crane's standard rental agreement pursuant to Tenn. Code Ann. § 62-6-123. We hold that it did.

# I.
## STANDARD OF REVIEW

The standards for reviewing summary judgments on appeal are well-settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Belk v. Obion County*, 7 S.W.3d 34, 36 (Tenn. Ct. App. 1999). In order to be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n.5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Cawood v. Davis*, 680 S.W.2d 795, 796-97 (Tenn. Ct. App. 1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) by rehabilitating evidence challenged by the moving party, (3) by producing additional evidence that creates a material factual dispute, or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215 n.6. A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of a cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

Summary judgments enjoy no presumption of correctness on appeal. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 195 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we

must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

## II.
### ELLIOTT CRANE'S LIABILITY BASED ON RESPONDEAT SUPERIOR

We turn first to Elliott Crane's assertion that the trial court erred by concluding as a matter of law that it is vicariously liable for Mr. Solley's alleged negligence under the doctrine of respondeat superior. We have determined that Fox Ridge is not entitled to a judgment as a matter of law on this issue because the evidence, in its present state, would permit the fact-finder to reasonably infer that Mr. Solley was the borrowed servant of either Fox Ridge or Mr. Fritscher.

Under the doctrine of respondeat superior, a master faces liability for its servant's negligence if the servant is acting within the scope of his or her employment, even if the master itself is not negligent. *White v. Revco Discount Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000); *Smith v. Henson*, 214 Tenn. 541, 551, 381 S.W.2d 892, 897 (1964); *National Life & Accident Ins. Co. v. Morrison*, 179 Tenn. 29, 38, 162 S.W.2d 501, 504 (1942); Warren A. Seavey, *Handbook of the Law of Agency* § 83 (1964) ("*Handbook of the Law of Agency*"). One rationale for this rule is that masters are in the best position to avoid the risk of harm their enterprise may cause and can spread the burden of potential harm by insuring against it and by adjusting prices accordingly. Merton Ferson, *Principles of Agency* § 26, at 34 (1954) ("*Principles of Agency*").

Control is a key element in the creation of a master-servant relationship. Restatement (Second) of Agency § 220(1) (1958); *Handbook of the Law of Agency* § 84C. In Tennessee, the right to control the result is not determinative of the existence of the relation of master and servant, but the actual control of means and method is. *McDonald v. Dunn Constr. Co.*, 182 Tenn. 213, 220, 185 S.W.2d 517, 520 (1945); *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 416 (Tenn. Ct. App. 1988).

Control of how work gets done also plays an important role in determining whether a servant of one master becomes the loaned servant of another.[1] *See Price v. McNabb & Wadsworth Trucking Co.*, 548 S.W.2d 316, 318 (Tenn. Ct. App. 1976); Restatement (Second) of Agency § 227 cmt. a; *Principles of Agency* § 36, at 45-46; *Handbook of the Law of Agency* § 86A, at 147. Temporary masters may control servants' performance of specific acts even while the servants are controlled by their general employers for general matters. *Gaston v. Sharpe*, 179 Tenn. 609, 614, 168 S.W.2d 784, 786 (1943); *Parker v. Vanderbilt Univ.*, 767 S.W.2d at 416; *Richardson v. Russom Crane Rental Co.*, 543 S.W.2d 590, 592 (Tenn. Ct. App. 1975).

Where a general employer rents out a machine and employee to operate it, the courts generally infer that the operator remains in the service of his or her general employer on the assumption that the temporary employers only control what the servants do, not how they do it.

---

[1] Other factors include the length of employment by the temporary employer; the skill of the worker; and whether the general employer, the temporary employer, or the worker supplies the instrumentalities or tools. *See* Restatement (Second) of Agency §§ 220(2), 227 cmt. a; *Handbook of the Law of Agency* § 86A, at 147.

-4-

Restatement (Second) of Agency § 227 cmt. c; *Handbook of the Law of Agency* § 86A, at 147. Nevertheless, the equipment operator becomes the temporary employer's servant for the purposes of a specific act when the temporary employer directs the servant on the details of how to accomplish the act. *Gaston v. Sharpe*, 179 Tenn. at 614, 168 S.W.2d at 786; *Richardson v. Russom Crane Rental Co.*, 543 S.W.2d at 592; Restatement (Second) of Agency § 227 cmt. d; *Principles of Agency* § 36, at 46.

In *Gaston v. Sharpe*, the temporary employer rented a dragline and its operator. The site foreman signaled the operator to allow slack in the cable so that the plaintiff could adjust it. The operator either misunderstood the directions or negligently attempted to comply, with the unfortunate result that the machine dropped a 2,000 pound hammer on the plaintiff's leg. *Gaston v. Sharpe*, 179 Tenn. at 610-12, 168 S.W.2d at 784-85. Reasoning that the foreman controlled the operator by directing him to slacken the cable, the Tennessee Supreme Court upheld the trial court's directed verdict that the operator was the borrowed servant of the temporary employer when performing the specific act that injured the plaintiff. *Gaston v. Sharpe*, 179 Tenn. at 614-15, 168 S.W.2d at 786; *Richardson v. Russom Crane Rental Co.*, 543 S.W.2d at 592 (holding that a crane operator is the borrowed servant of a temporary employer who directs the operation of the crane).

Mr. Armoneit and Fox Ridge contend that *Elliott Crane Serv., Inc. v. H.G. Hill Stores, Inc.*, 840 S.W.2d 376 (Tenn. Ct. App. 1992) controls here. In that case, this court held Elliott Crane vicariously liable for the negligence of its crane operator. There, however, the court specifically pointed out that the record contained no evidence "that the movement of the crane which produced the [accident] was in response to any signal, request or command of any employee of defendant." *Elliott Crane Serv., Inc. v. H.G. Hill Stores, Inc.*, 840 S.W.2d at 381.

The uncontradicted testimony in this case indicates that Mr. Fritscher and his employees were directing Mr. Solley's operation of the crane when Mr. Armoneit was injured. Mr. Solley testified at his deposition that Mr. Fritscher directed him with hand signals on every truss that he placed. Mr. Hollingsworth indicated in his deposition that, although he was not present when Mr. Armoneit was injured, in his experience the people on the wall attaching the truss generally flag the crane operator. In this case, Mr. Fritscher's employees were attaching the trusses at the time of the accident. Accordingly, a fact-finder could reasonably conclude that Mr. Fritscher or his employees were flagging Mr. Solley at the time of the accident and, therefore, that Mr. Solley was the borrowed servant of Mr. Fritscher or Fox Ridge when his allegedly negligent operation of the crane injured Mr. Armoneit.[2] As a consequence, the trial court erred in holding that, as a matter of law, Mr. Solley was Elliott Crane's servant when the accident occurred. Fox Ridge is not entitled to summary judgment on this issue because reasonable persons can draw different conclusions from the facts.

---

[2]We need not specifically determine under agency principles whether Mr. Solley was the borrowed servant of Fox Ridge or Superior Framing. Either way, he was not Elliott Crane's servant in performing the specific act that caused the accident.

# III.
## THE EFFECT OF THE *RIDINGS V. RALPH M. PARSONS CO.* DECISION

Mr. Armoneit asserts that the policy considerations underlying the Tennessee Supreme Court's decision in *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79 (Tenn. 1996) require holding that Elliott Crane is vicariously liable for Mr. Solley's alleged negligence. He asserts that not holding Elliott Crane vicariously liable for Mr. Solley's acts will impermissibly permit Elliott Crane to shift the responsibility for his injuries to his employers who are statutorily immune from suit. Mr. Armoneit misunderstands the nature and effect of Elliott Crane's argument.

In its *Ridings* decision, the Tennessee Supreme Court stated broadly that defendants would not be permitted to lay off all or part of their fault on persons against whom the plaintiff had no cause of action. *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d at 83. This decision, as well as a later decision construing it, stand for the clear proposition that defendants may not assign fault to a plaintiff's employer because the Tennessee General Assembly has "already determined that for policy reasons the employer may not be the legal cause of the plaintiff's injuries." *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 (Tenn. 1997). Even though the Court has now retreated from the *Ridings* decision in other contexts,[3] it is the law in Tennessee that the *Ridings* and *Snyder* decisions "remain uniquely applicable with regard to the allocation of fault to employers in workers' compensation cases." *Carroll v. Whitney*, 29 S.W.3d at 19.

The concerns implicated in the *Ridings* and *Snyder* cases do not pertain here. Elliott Crane's argument is not that its fault should be compared with that of Fox Ridge or Mr. Fritscher. Rather, Elliott Crane is asserting that it cannot be held vicariously liable for Mr. Solley's negligent actions that allegedly caused Mr. Armoneit's injuries because it was not controlling Mr. Solley at the time. Based on the facts adduced so far, Elliott Crane asserts that Mr. Solley was a loaned servant of either Fox Ridge or Mr. Fritscher with regard to the acts that caused the accident. We have determined that Elliott Crane is correct as a matter of law. Based on the undisputed facts, Elliott Crane was not controlling Mr. Solley's operation of the crane when Mr. Armoneit was injured. Either Fox Ridge or Mr. Fritscher was responsible for the directions Mr. Solley was receiving regarding the hoisting and setting of the trusses.[4]

---

[3] Last year, the Tennessee Supreme Court held that, except for workers' compensation cases, "fairness to the parties" requires that fault be attributed to immune parties because the close fit between fault and liability will be lost "when some participants to an act of negligence are excluded from the apportionment of fault." *Dotson v. Blake*, 29 S.W.3d 26, 28 (Tenn. 2000); *Carroll v. Whitney*, 29 S.W.3d 14, 20 (Tenn. 2000).

[4] The current record does not enable us to determine whether Mr. Solley was under the direction of Fox Ridge or Mr. Fritscher when Mr. Armoneit was injured. Mr. Fritscher and his employees were directing Mr. Solley where to place the trusses. However, Fox Ridge ordered the crane, and Mr. Fritscher apparently signed Elliott Crane's rental agreement on behalf of Fox Ridge. These circumstances raise a question concerning whether Mr. Fritscher was acting as Fox Ridge's agent.

## IV.
### THE VALIDITY OF ELLIOTT CRANE'S INDEMNITY AGREEMENT

Elliott Crane contends that the trial court erred by holding that the indemnity provision in its standard rental agreement is void. We have already held that the exact same provision is void in *Elliott Crane Serv., Inc v. H.G. Hill Stores, Inc.*, 840 S.W.2d at 380. Again, we hold that the indemnity provision in Elliott Crane's standard rental agreement is void as contrary to the public policy reflected in Tenn. Code Ann. § 62-6-123.[5]

On this appeal, Elliott Crane attempts to distinguish *Elliott Crane Service, Inc. v. H.G. Hill Stores, Inc.* by pointing out that the company did not have liability insurance in the prior case. It asserts that it now has liability insurance and that fact should save its indemnity provision from emasculation under Tenn. Code Ann. § 62-6-123. We find this to be a distinction without a difference. Elliott Crane's promise to be responsible for its "sole negligence" is just as illusory as it was in *Elliott Crane Service, Inc. v. H.G. Hill Stores, Inc.* It is impossible to predict whether Elliott Crane's insurance will cover the damages for Elliott Crane's sole negligence in any given case. Thus, the mere existence of insurance coverage is not enough to save the indemnity provision. Pursuant to Tenn. Code Ann. § 62-6-123, the indemnity provision in Elliott Crane's standard rental agreement is void in its entirety as contrary to public policy.

## V.

We reverse the portion of the summary judgment holding, as a matter of law, that Elliott Crane is vicariously liable for Mr. Solley's actions. We also affirm the portion of the summary judgment holding that the indemnification provision in Elliott Crane's standard rental agreement is void as contrary to the public policy reflected in Tenn. Code Ann. § 62-6-123. The case is remanded to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to Elliott Crane Service, Inc. and its surety, Fox Ridge Homes, Inc., and Dennis Armoneit for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[5]In relevant part, Tenn. Code Ann. § 62-6-123 provides that an agreement concerning "the construction, alteration, repair or maintenance of a building . . . purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, the promisee's agents or employees, or indemnitee, is against public policy and is void and unenforceable."