# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 23, 2015 Session

## KEITH PATTERSON ET AL. v. SHELTER MUTUAL INSURANCE COMPANY

**Appeal from the Chancery Court for Rutherford County**
**No. 12CV-973      Robert E. Corlew III, Chancellor**

_____

**No. M2014-01675-COA-R9-CV – Filed September 11, 2015**

_____

This is an action by homeowners against the insurance company that provided their homeowners' insurance coverage. At issue is whether the insurer violated Tenn. Code Ann. § 56-7-130(b) (2006) by failing to *make available* coverage for insurable sinkhole losses and whether the physical damage to the home was caused by "sinkhole activity." When the insurer denied coverage, Plaintiffs commenced this action alleging, *inter alia*, that the insurer breached the policy and acted in bad faith when it refused to pay their claim. Plaintiffs also sought to hold the insurer liable for violating Tenn. Code Ann. § 56-7-130(b) because the insurer did not notify Plaintiffs that sinkhole coverage was an available option. At the time of the occurrence, the statute stated: "Every insurer offering homeowner property insurance in this state shall *make available* coverage for insurable sinkhole losses on any dwelling, including contents of personal property contained in the dwelling, to the extent provided in the policy to which the sinkhole coverage attaches." Tenn. Code Ann. § 56-7-130(b) (emphasis added). It is undisputed that the insurer did not notify Plaintiffs that sinkhole coverage was available. The insurer filed a motion for summary judgment contending that Tenn. Code Ann. § 56-7-130 did not require it to notify Plaintiffs that sinkhole coverage was an available option. The insurer also denied the factual assertion that sinkhole activity caused the loss and asserted that it was not liable because, if sinkhole activity caused the damage, the policy contained an exclusion for such an occurrence. Plaintiffs filed a cross-motion for summary judgment, arguing that they were entitled to a judgment that the insurer had violated Tenn. Code Ann. § 56-7-130 and that their insurance policy did not exclude coverage for the damage to their home. The trial court granted Plaintiffs' motion with respect to Tenn. Code Ann. § 56-7-130, concluding it was undisputed that the insurer "did nothing to make the Plaintiffs aware of the sinkhole endorsement and, therefore, did not meet the requirements of [Tenn. Code Ann. § 56-7-130]." The trial court denied summary judgment on all remaining issues concluding that material facts were disputed concerning the cause of the damage to Plaintiffs' home. On appeal, we reverse the grant of summary judgment to Plaintiffs based on Tenn. Code Ann. § 56-7-130 and remand with

instructions to grant summary judgment to the insurer on that issue because the statutory language, "make available," does not require insurers to give notice that sinkhole coverage is available. We affirm the trial court's denial of summary judgment concerning whether the loss at issue is excluded from coverage because, as the trial court correctly found, material facts are in dispute.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Autumn LaCarla Gentry and Thomas M. Donnell, Jr., Nashville, Tennessee, for the appellant, Shelter Mutual Insurance Company.

Sonya S. Wright, Murfreesboro, Tennessee, and Joshua E. Burnett, Tampa, Florida, for the appellees, Keith and Kimberly Patterson.

**OPINION**

Keith and Kimberly Patterson ("Plaintiffs") acquired a Platinum Shield Homeowners Policy from Shelter Mutual Insurance Company ("Shelter") in 1995 that did not expressly include or exclude "sinkhole coverage." The policy was renewed every year through 2011. At all times material to this action, the policy stated in pertinent part:

PERILS WE INSURE AGAINST-SECTION I

We cover accidental direct physical loss to property covered under Dwelling and Other Structures Coverages except for losses excluded in this section.
. . .

EXCLUSIONS-SECTION I

We do not cover any loss or damage if it would not have occurred in the absence of any event or condition listed below.
. . .

Movement of materials that support, or surround, a structure. We do not cover damage to any structure . . . if that damage is caused by the sinking, rising, shifting, expanding, or contracting, of earth or any other supporting, or surrounding, material. This exclusion apples to earthquakes, volcanic explosions, lava flow, landslides, mudflow, mudslides, sinking of ground,

- 2 -

subsidence, erosion, movement resulting from improper construction or compaction, improper site selection or any other force.

Prior to January 7, 2007, the effective date of Tenn. Code Ann. § 56-7-130 (2006), insurers doing business in Tennessee were not required to make available coverage for insurable sinkhole losses on dwellings they insured. *See* 2006 Tenn. Pub. Acts. Ch. 805, § 2. However, for policies "issued or renewed on or after January 7, 2007,"[1] the statute stated that "every insurer offering homeowner property insurance" in Tennessee "shall make available coverage for insurable sinkhole losses on any dwelling, including contents of personal property contained in the dwelling, to the extent provided in the policy to which the sinkhole coverage attaches." Tenn. Code Ann. § 56-7-130(b) (2006).

In March 2011, Plaintiffs' house was damaged by what they allege was a sinkhole. Plaintiffs made a claim for sinkhole loss to Shelter in August 2011. In response to the claim, Shelter employed HSA Engineers & Scientists ("HSA") to investigate the cause of the damage. In November 2011, HSA issued a report stating that "sinkhole activity was not a cause of the physical damage to the home. However, subsurface conditions that were consistent with sinkhole activity were discovered in the rear yard and were judged to be the cause of the formation of the depression [found in the backyard]."[2]

Plaintiffs filed this action against Shelter in July 2012, asserting claims for breach of contract, violations of the Tennessee Consumer Protection Act, and bad faith under Tenn. Code Ann. § 56-7-105 arising from "a sinkhole loss" to their home that occurred on or about March 1, 2011. They alleged that the Platinum Shield Homeowners Policy was an "'all risk' policy which covers 'accidental direct physical loss' to the insured dwelling unless caused exclusively by one or more excluded perils" and that the damage to their property was "not excluded under the Platinum Policy." The complaint also contained claims of negligence per se based on Shelter's alleged violations of Tenn. Code Ann. § 56-7-130.

At the time of Plaintiffs' loss, Tenn. Code Ann. § 56-7-130(b) stated: "Every insurer offering homeowner property insurance in this state shall make available coverage for insurable sinkhole losses on any dwelling, including contents of personal property contained in the dwelling, to the extent provided in the policy to which the sinkhole coverage attaches." Plaintiffs alleged that Shelter did not make sinkhole coverage available to them because it did not notify them that they could purchase it. It is undisputed that Shelter never informed Plaintiffs that they could purchase sinkhole

---

[1] The act states that it "shall take effect for policies issued or renewed on or after January 7, 2007 . . . ." *See* 2006 Tenn. Pub. Acts. Ch. 805, § 2.

[2] HSA's report is not contained in the record, but Plaintiffs do not dispute that the report contains the quoted statement.

coverage. It is also undisputed that Shelter filed a policy endorsement concerning sinkhole coverage with the Tennessee Department of Commerce and Insurance in October 2006.

In March 2014, Shelter filed a motion for summary judgment on two main grounds. First, Shelter contended that summary judgment was appropriate because Tenn. Code Ann. § 56-7-130 did not require it to notify Plaintiffs that they could purchase sinkhole coverage. Second, Shelter denied that the damage to Plaintiffs' home was the result of sinkhole activity but argued that, even if sinkhole activity was the cause of Plaintiffs' loss, an exclusion in the insurance policy relieved it of any obligation to pay for sinkhole-related damage.

Plaintiffs filed a response in opposition to Shelter's motion for summary judgment. In addition, Plaintiffs filed a cross-motion for summary judgment contending that that they were entitled to a judgment that Shelter had failed to comply with Tenn. Code Ann. § 56-7-130 because Shelter failed to notify them that they could purchase sinkhole coverage. Plaintiffs also argued that they were entitled to a judgment as a matter of law that Shelter had breached the insurance policy because Shelter had not proven that the policy contained an exclusion for sinkhole damage.

The trial court granted Plaintiffs' motion with respect to Tenn. Code Ann. § 56-7-130 because it concluded that Shelter had violated the statute. In relevant part, the court's order states:

> Further, the Court finds that Defendant had a duty under Tenn. Code Ann. § 56-7-130 ("Sinkhole Statute") to make available the sinkhole coverage to the Plaintiffs and failed to do so. The undisputed facts, for the purposes of summary judgment, in this matter are that the Defendant did nothing to make the Plaintiffs aware of the sinkhole endorsement and, therefore, did not meet the requirements of the Sinkhole Statute. The questions of what Defendant should have done to make the coverage available and what damages this caused the Plaintiffs should be determined by the jury.

As for the exclusion concerning "movement of materials that support, or surround, a structure," the trial court found that material facts were in dispute and denied both parties' motions.

Thereafter, the trial court and this court granted Shelter's application for an interlocutory appeal pursuant to Tenn. R. App. P. 9.

ANALYSIS

This case is before us on an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. Shelter's Rule 9 application designated three issues for appeal: (1) whether the trial court erred by concluding that Tenn. Code Ann. § 57-6-130 required Shelter to notify or make Plaintiffs aware that they could purchase sinkhole coverage; (2) whether the trial court erred when it denied Shelter's motion for summary judgment concerning the existence of a policy exclusion applicable to Plaintiffs' loss; and (3) whether the trial court erred when it determined that what Shelter needed to do to "make available" sinkhole coverage was an issue of fact for the jury.[3] We will address the interpretation of Tenn. Code Ann. § 57-6-130 first and the existence of a policy exclusion second; however, we will not discuss Shelter's third issue because our interpretation of Tenn. Code Ann. § 56-7-130 renders it moot.

STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party seeking summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Armoneit v. Elliot Crane Service, Inc.*, 65 S.W.3d 623, 627 (Tenn. Ct. App. 2001). If the facts are undisputed, the moving party who does not bear the burden of proof at trial can prove that it is entitled to a judgment as a matter of law if it "[s]ubmits affirmative evidence that negates an essential element of the nonmoving party's claim" or "[d]emonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *See* Tenn. Code Ann. § 20-16-101.

The decision to grant or deny a motion for summary judgment is a matter of law, and this court reviews such decisions de novo with no presumption of correctness. *Dick Broad Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (quoting *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). Accordingly, we must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied.

---

[3] On interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure, "the only issues that can be raised are those certified in the trial court's order granting permission to seek an interlocutory appeal and in the appellate court's order granting the interlocutory appeal." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000). When neither the trial court nor this court has delineated the issues to be addressed on appeal, we have considered it appropriate to address the issues that both parties have briefed without objection. *See McCormick v. Illinois Cent. R. Co.*, No. W2008-00902-COA-R9-CV, 2009 WL 1392575, at *2 n.4 (Tenn. Ct. App. May 19, 2002).

*Armoneit*, 65 S.W.3d at 628. In so doing, we must consider the evidence in the light most favorable to the non-moving party and resolve all inferences in its favor. *Id.*

## I. TENN. CODE ANN. § 56-7-130 (2006)

Shelter contends it was entitled to summary judgment as a matter of law concerning Plaintiffs' claims under Tenn. Code Ann. § 56-7-130 because the statute does not require Shelter to expressly offer or otherwise inform an insured that sinkhole coverage is an available option. Conversely, Plaintiffs argue that Shelter was required to make them aware that they could purchase sinkhole coverage.

At all times relevant to the matters at issue, Tenn. Code Ann. § 56-7-130 stated: "Every insurer offering homeowner property insurance in this state shall *make available* coverage for insurable sinkhole losses on any dwelling, including contents of personal property contained in the dwelling, to the extent provided in the policy to which the sinkhole coverage attaches." Tenn. Code Ann. § 56-7-130(b) (2006) (emphasis added).[4]

Determining whether Shelter complied with Tenn. Code Ann. § 56-7-130 (2006) requires us to interpret this statute. Statutory construction is a question of law that this court reviews de novo with no presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). When interpreting a statute, our primary objective "is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Id.* (citing *Houghton v. Aramark Educ. Res., Inc.* 90 S.W.3d 676, 678 (Tenn. 2002)). Courts ascertain legislative intent "from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language." *Faust v. Metro. Gov't. of Nashville*, 206 S.W.3d 475, 490 (Tenn. Ct. App. 2006) (quoting *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2002)). Although every word that the legislature uses must be given effect, this court "must be circumspect about adding words to a statute that the General Assembly did not place there." *Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011) (citing *City of*

---

[4]The General Assembly amended Tenn. Code Ann. § 56-7-130(b) effective July 1, 2014. Subsection (b) currently states:

> Every insurer offering homeowner property insurance in this state shall make coverage available for insurable sinkhole losses, including contents of personal property contained in the dwelling. The insurer may require an inspection of the property before issuance of sinkhole loss coverage. Nothing in this section mandates that sinkhole loss coverage be included in any homeowner property insurance policy, but only that insurers offering homeowner property insurance make such coverage available for optional purchase on request by policyholders.

*See* 2014 Tenn. Pub. Acts 537, § 1. The 2014 amendment became effective after the occurrence at issue, and the amendment is not retroactive. Therefore, the 2014 amendment has no bearing on this appeal.

*Knoxville v. Entm't Res., LLC*, 116 S.W.3d 650, 658 (Tenn. 2005)). When the statue is clear, we need go no further than its written language; however, when the statute is ambiguous we may reference the statutory scheme, history of the legislation, or other sources. *See In re Estate of Tanner*, 295 S.W.3d at 614.

When the General Assembly has not provided a specific definition for a statutory term, courts may look to other sources for guidance. *See State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007). Although dictionary definitions of words or phrases are not binding on this court, *see Brown v. Tennessee Dept. of Correction*, 11 S.W.3d 911, 912-13 (Tenn. Ct. App. 1999), dictionaries remain the usual and accepted source for information concerning the natural and ordinary meaning of words. *English Mountain Spring Water Co. v. Chumley*, 196 S.W.3d 144, 148 (Tenn. Ct. App. 2005); *see State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). We are mindful that our obligation is to interpret the statute as a whole rather than a word or phrase in isolation. *See Waldschmidt v. Reassure Am. Life. Ins. Co.*, 271 S.W.3d 173, 176 n.2 (Tenn. 2008). Dictionaries are helpful tools for identifying the plain meaning of a word or phrase, but they do not absolve us of our responsibility to carry out the General Assembly's intent when it enacted a statute. *See id.*

Plaintiffs argue that Shelter was required to make them aware that they could purchase sinkhole coverage; however, the statute does not expressly require *notification*, and, as mentioned above, courts "must be circumspect about adding words to a statute that the General Assembly did not place there." *See Coleman*, 341 S.W.3d at 241. Nevertheless, Plaintiffs contend that the phrase "make available" implicitly entails the requirement that they be *offered* – expressly made aware – that they could purchase sinkhole coverage. They argue that the plain meaning of the phrase "make available" is "to offer" and that the definition of "offer" is "[t]o present for acceptance or rejection; proffer" or "[t]o put forward for consideration; propose." The American Heritage College Dictionary, 947 (3d ed. 1997); *see* Concise Oxford English Dictionary 992 (11th ed. 2004) ("present (something) for (someone) to accept or reject"). Therefore, Plaintiffs contend, the statutory provision to "make available" required Shelter to offer them the opportunity to accept or reject sinkhole coverage. We are not persuaded by this argument.

The phrase "make available" is not defined in the statute, and we are not aware of any appellate decision in Tennessee that interprets this phrase in the context of this statute. [5] Accordingly, we turn to dictionaries for guidance in ascertaining the natural and ordinary meaning of "make available." *See English Mountain*, 196 S.W.3d at 148.

_____

[5] In addition to the trial court order in this case, we are aware of two other trial court orders that have concerned this version of Tenn. Code Ann. § 57-6-130. On July 19, 2011, in an order authored by then-Judge Jeffrey S. Bivins (now Justice Bivins of the Tennessee Supreme Court), the Williamson County Circuit Court concluded that "the plain language of Tenn. Code Ann. § 56-7-130 does not require an insurance agent or insurance company to take affirmative actions or to make potential policyholders

(continued…)

The definitions that Shelter cited indicate that "make" means "to seem to begin (an action)," "to cause to happen to or be experienced by someone," and "to cause to exist occur, or appear . . . .", while "available" means "present or ready for immediate use" and "accessible, obtainable . . . ." *See* Webster's Ninth New Collegiate Dictionary 119, 718-19 (9th ed. 1987). These definitions are consistent with those contained in other sources. For example, the American Heritage College Dictionary states that "make" is a verb meaning "[t]o cause to exist or happen; bring about; create" and "[t]o bring into existence by shaping modifying, or putting together material; construct . . . ." The American Heritage College Dictionary, *supra*, at 818. It also states that "available" is an adjective meaning "[p]resent and ready for use; at hand; accessible" and "obtainable." *Id.* at 94. Similarly, another source defines "available" as "able to be . . . obtained." Concise Oxford English Dictionary, *supra*, at 90.[6]

None of these definitions contain the requirement that one party notify another in order to make something available. Instead, an item or product is made available when it can be obtained. For example, a library makes a book available by having the book in its shelf as part of its collection. Moreover, the library does not have to inform its patrons that it has a specific book for that book to be available to its patrons. Instead, the book is made available because it is part of the library's collection. In the same way, an insurer makes a particular type of coverage available when it is obtainable upon request of an insured. For the reasons stated above, we find the natural and ordinary meaning of "make available" is to cause something to be accessible or obtainable.

The foregoing notwithstanding, Plaintiffs correctly note that some definitions of "offer" include the phrase "make available."[7] However, the purpose of consulting a dictionary during the process of interpreting a statute is to determine the "natural and ordinary" meaning of the word, not to formulate a comprehensive list of every possible meaning for the word or phrase at issue. *See Faust*, 206 S.W.3d at 490; *English Mountain*, 196 S.W.3d at 148. "That a definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Taniguchi v. Kan Pac. Saipan, Ltd.*, --- U.S. ----, 132 S. Ct. 1997, 2003, 182 L. Ed. 2d 903 (2012) (citing *Mallard v. United States Dist. Court for Southern Dist. of Iowa*, 490

<hr />

aware of a sinkhole insurance coverage." *Burkhalter, et al. v. Eric Loes, et al.*, Case No. 2010-184. On September 20, 2012, the Fifth Circuit Court for Davidson County denied a motion for summary judgment because a genuine dispute of material fact existed; accordingly, that court did not interpret Tenn. Code Ann. § 57-6-130. *Shakir et al. v. Farmers Ins. Exchange*, Case No. 10C-4235.

[6] *See also* The New Oxford American Dictionary 109, 1023 (2nd ed. 2005); The Merriam-Webster Dictionary 33, 296 (2005); Webster's Third New International Dictionary 150, 1363-64 (1993).

[7] *See* Webster's Third New International Dictionary 1566 (1993) (including "to make available or accessible" as one definition of "offer").

- 8 -

U.S. 296, 301 (1989)) (emphasis in original). Accordingly, the fact that some senses of "offer" include the phrase "make available" does not mean that these words are ordinarily understood to be synonymous.

More importantly, the General Assembly did not use the word "offer" when it enacted Tenn. Code Ann. § 56-7-130. In 2006, the General Assembly had used "offer" in several statutes regarding insurance coverage but did not use that word when it drafted the statute at issue. *See* Tenn. Code Ann. § 56-7-2363(a) (2006) ("All individual and group health insurance policies providing coverage on an expense incurred basis . . . *shall include*, or *shall offer* to prospective policy holders and existing policy holders on renewal as an optional benefit, coverage for colorectal cancer examinations . . . .") (emphasis added); Tenn. Code Ann. § 56-7-2603(a)(1) (2006) ("[A]ny insurer providing individual, franchise, blanket or group policy of insurance issued pursuant to this title that provides hospital expense and surgical or medical expense insurance . . . *shall offer to provide* benefits for expense . . . arising from conditions or disorders of hearing or conditions or disorders of speech, voice, or language . . . .") (emphasis added). This court must abide by the words that the legislature chose to use, and we cannot add words that the General Assembly chose not to include. *See Coleman*, 341 S.W.3d at 241.

Indeed, in at least two other statutes, the General Assembly explicitly required insurance companies *to notify* existing policyholders when they "make available" a new type of coverage. *See* Tenn. Code Ann. § 56-7-2601(b)-(c) (2006) (requiring certain insurers to "make available" benefits for the treatment of mental health issues on policies issued after July 1, 1980 and *to notify* group policyholders that the new coverage was available); Tenn. Code Ann. § 56-7-2604(b) (2006) (requiring insurers to "make available benefits for pediatric nursery care" on policies issued after January 1, 1983 and *to notify* "the group policyholder or group contract holder of the availability of [this coverage]" with respect to policies issued before January 1, 1983).[8] Because the General Assembly knows how to explicitly require insurers to notify existing policyholders about new coverage, we find no rational basis to add notification as an implicit requirement to Tenn. Code Ann. § 56-7-130.

For the foregoing reasons, we conclude that Tenn. Code Ann. § 56-7-130 (2006) does not require insurers to notify policyholders that they could purchase sinkhole coverage. Instead, by using the words "make available" the General Assembly only intended to require that insurers make sinkhole coverage obtainable by their customers upon request. It is undisputed that Shelter filed an endorsement with Department of Commerce and Insurance and that this endorsement was approved. Accordingly, sinkhole coverage was available to Plaintiffs through Shelter. Therefore, we reverse the trial

---

[8] We cite to the 2006 versions of these and other statutes because the General Assembly is presumed to have been aware of these statutes when it enacted Tenn. Code Ann. § 56-7-130 in 2006. *See Hayes v. Gibson County*, 288 S.W.3d 334, 337 (Tenn. 2009).

court's order granting summary judgment to the Plaintiffs on the grounds that Shelter failed to comply with Tenn. Code Ann. § 56-7-130 (2006) and remand with instructions to grant summary judgment to Shelter on this issue. We will now address the trial court's denial of Shelter's motion for summary judgment concerning whether the policy exclusion applies to Plaintiffs' loss.

## II. POLICY EXCLUSION

Shelter contends that Plaintiffs' breach of contract and statutory bad faith claims should be dismissed because the insurance policy in question does not cover the loss that Plaintiffs claimed for their property. It contends that the trial court erred when it denied Shelter's motion for summary judgment based on the existence of a material dispute of fact. We disagree.

"The purpose [of summary judgment] is to resolve controlling issues of law, and that alone." *Byrd v. Hall*, 847 S.W.2d 208, 216 (Tenn. 1993) (quoting *Bellamy v. Federal Exp. Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988)). Accordingly, summary judgment is inappropriate when the movant has failed to demonstrate that there are genuine disputes of material fact. *See Byrd*, 846 S.W.2d at 216; *Armoneit*, 65 S.W.3d at 627; Tenn. R. Civ. P. 56.04. A fact is "material" if "it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A "genuine issue" exists when a reasonable jury could legitimately resolve the fact in favor of one side or the other. *Id.*

A claim for breach of contract requires the plaintiff to prove "(1) existence of an enforceable contract, (2) nonperformance amount to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). In order to recover for bad faith under Tenn. Code Ann. § 56-7-105, Plaintiffs must prove "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith." *Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004) (quoting *Stooksbury v. Am. Nat. Property and Cas. Co.*, 126 S.W.3d 505, 519 (Tenn. Ct. App. 2003)). Accordingly, in order to recover for both breach of contract and bad faith under Tenn. Code Ann. § 56-7-105, Plaintiffs must show, *inter alia*, that their homeowner's policy required Shelter to pay for the damage they sustained. Conversely, Shelter is entitled to summary judgment on this issue if it negates an essential element of both these claims, which can be accomplished if Shelter demonstrates that the policy does not cover the claimed loss. Shelter contends that it has done so by demonstrating that an exclusion in the policy applies to the claim, which relieves it of any liability.

Generally, courts should construe insurance contracts in the same manner as any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). Accordingly, "[t]he language of the policy must be taken and understood in its plain, ordinary and popular sense." *Id.* "When coverage questions arise, the courts should consider the components of an insurance policy in the following order: (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements." *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 20 (Tenn. Ct. App. 2002) (citing *Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998)).

Here, the policy covers "accidental direct physical loss to property covered under Dwelling and Other Structures Coverages except for losses excluded in this section." Accordingly, if Plaintiffs' house was covered property and the damage that occurred to it was "accidental direct physical loss" as defined by the policy, then the insurance policy covers Plaintiffs' claimed loss unless an exclusion eliminates that coverage.

Both parties agree that this loss occurred while the policy was in effect. Further, Shelter does not dispute that the policy covers Plaintiffs' property or that the loss in question was "accidental direct physical loss" as defined in the policy. Instead, Shelter argues that the exclusion relieves it of the obligation to pay for Plaintiffs' loss. As a result, Shelter, as both the party seeking summary judgment and as an insurer, must carry the burden of showing that a policy exclusion applies to the loss Plaintiffs suffered. *See Armoneit*, 65 S.W.3d at 627; *Jefferson*, 104 S.W.3d at 22 n.10 ("[A]n insurance company has the burden of proving that an exclusion in its policy applies to a claim.").

The exclusion at issue eliminates coverage for damage that "would not have occurred in the absence of any event or condition . . . *caused by* the sinking, rising, shifting, expanding, or contracting, of earth or any other supporting, or surrounding, material." (emphasis added). Thus, neither party can be entitled to summary judgment on the exclusion issue if facts material to whether the loss was or was not caused by the listed events or conditions are in dispute. As the trial court correctly found, facts material to determining the cause of the damage to Plaintiffs' home are disputed. Accordingly, Shelter was not entitled to summary judgment on this issue.

For the foregoing reasons, we affirm the denial of Shelter's motion for summary judgment concerning whether the exclusion applies to Plaintiffs' loss.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed equally against Plaintiffs, Keith and Kimberly Patterson, and Defendant, Shelter Mutual Insurance Company.

_____
FRANK G. CLEMENT, JR., JUDGE