# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
June 23, 2015 Session


## AVERY PLACE, LLC, ET AL. v. HIGHWAYS, INC.


**Appeal from the Chancery Court for Putnam County**
**No. 2013282      Ronald Thurman, Chancellor**

_____


**No. M2014-02043-COA-R3-CV – Filed December 7, 2015**
_____


Subdivision developer brought a breach of contract action against the contractor who had been engaged nine years previously to pave the roads in the subdivision after the contractor refused to complete the second phase of paving for the roads at the price specified in the contract.  The contractor moved for summary judgment on the grounds that the provision in the contract relating to the second phase of paving was a separate offer which had not been accepted by the developer and that the action was barred by laches and the statute of limitations.  Developer also moved for summary judgment.  The trial court granted summary judgment to developer and denied summary judgment to contractor.  Contractor appeals.  Discerning no error, we affirm the judgment of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Gregory L. Cashion and Joshua K. Chessner, Nashville, Tennessee, for the appellant, Highways, Inc.

Daniel H. Rader, IV, Cookeville, Tennessee, for the appellees, Avery Place, LLC, and Bettye Vaden

**OPINION**

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs Bettye Vaden and Avery Place, LLC (collectively "Avery"),[2] who were developing a residential subdivision in Putnam County, entered into a contract with Highways, Inc. ("Highways"), a road contractor, in September 2003 to pave the roads in the subdivision for the total cost of $46,000. The paving was to be done in two phases, the first being a layer of base and binder material, and the second being a top coat of asphalt. Highways laid the base and binder in 2003 and was paid 80% of the contract price, $37,200; Avery contacted Highways to install the asphalt coat in late 2012. When Avery requested that Highways complete the paving, Highways quoted a cost of $38,000; Avery, however, insisted that the paving be completed for $8,800, the amount remaining from the contract price.

Being unable to resolve the matter, on September 16, 2013, Avery filed suit against Highways for breach of contract, alleging that the parties had entered into a contract for paving work to be done in two phases, the "original paving" which was to occur during the construction of the subdivision, and the "final paving" which was to occur upon sufficient completion of the subdivision. The complaint alleged further that "[i]t was contemplated by the parties that Plaintiffs would request Defendant to complete the second phase of the paving contract at an indefinite time after a completion of the first phase, which time may be months or years" and that Highways breached the contract by failing to perform the second phase of paving in 2013. Highways answered, generally denying the allegations of breach of contract and setting forth certain affirmative defenses, including that the action was barred by laches.

In due course, Highways filed a motion for summary judgment, contending:

[T]here are no genuine issues as to any material fact regarding the contractual obligations of Highways and the contractual rights of the parties. Specifically, i) Highways' [sic] has fulfilled its contractual obligations; ii) the Statute of Limitations on the Plaintiffs' claim has expired; iii) Highways['] offers which were never accepted have expired; and iv) the Plaintiffs' claimed is barred by laches.

---

[1] This case was resolved on cross motions for summary judgment. Unless otherwise noted, the facts set forth in this opinion are taken from the pleadings and materials filed relative to the summary judgment motions and are not disputed.

[2] Bettye Vaden is the President of Avery Place, LLC.

2

Avery subsequently filed its own motion for summary judgment on the grounds that:

> [Plaintiffs] have established the existence of a valid, enforceable contract between the Plaintiffs and the Defendant, the breach by the Defendant, and damages sustained by the Plaintiffs. With respect to these issues, there are no material facts in dispute, and the Plaintiff is entitled to judgment as a matter of law.

Each party supported its motion with depositions, affidavits and statements of undisputed fact.

On September 16, 2014, the court granted summary judgment to Avery, holding:

> The Court finds that the Plaintiff, Bettye Vaden, entered into a written contract with the Defendant, Highways, Inc., on September 18, 2003. The Court finds that the original contract was returned to Highways, Inc. and the original was in its possession and control. The Court further finds that the contract was acted on, and construction began. The Court further finds that the contract was silent as to the time of completion, that the undisputed facts based on the testimony of Mark Odom was that the last phase of construction would not be completed until no less than one year had gone by. The Court finds that Highways, Inc. has not completed construction under the contract. The Court finds that the statute of limitations did not begin to run until the time of breach. The Court finds that the first time anyone had notice that Highways, Inc. did not intend to perform the contract was 2013, and this claim is not barred by the statute of limitations.

> The Court further finds that there was one contract, for work to be performed in two installments. The Court finds that there was a contract, and Highways, Inc. has breached the contract. The Court finds that Plaintiff, Bettye Vaden, is entitled to summary judgment as a matter of law. The Court finds that the material facts are not in dispute with respect to Plaintiffs' Motion for Summary Judgment.

> The Court further finds that the statute of limitations does not apply to bar the claim. The Court further finds that the doctrine of laches should not be applied to bar this claim, and the elements are not met because the Court does not find that Plaintiff Bettye Vaden was negligent with respect to this claim. The facts in the record supplied by Highways, Inc. do not demonstrate any negligence on the part of Plaintiff, Bettye Vaden. The Court finds that Highways, Inc. is prejudiced by the increased cost of

3

material, but that Highways, Inc. could have put a timeframe in the contract or a cost protection provision in the contract, but elected not to do so.

The Court finds that there is no material issue of fact in dispute, and the Plaintiff's Motion for Summary Judgment should be granted. The Court further finds that Defendant's Motion for Summary Judgment is not well taken and should be denied.

The Court further finds that the time at issue was not unreasonable. Upon a review of the record, the Court finds that the undisputed testimony of the Defendant's witnesses establish that construction projects of this type are normally completed in no less than a year, and that Mr. Odom testified that the second phase of construction would [be completed in] no less than one year after the initial contract date. The Court finds that the timing was not unreasonable.

The Court further finds that the Plaintiff has sustained damages in the amount of $29,200, based on the updated estimate from Highways, Inc. of $38,000, less the $8,800 remaining contract price.

Highways appeals, raising the following issues:

1.  Whether the Chancery Court was correct in granting summary judgment as to Plaintiff-Appellees' claim and denying Defendant-Appellant's Motion for Summary Judgment where the Plaintiff-Appellees waited over nine years to accept an offer to perform construction work.

2.  Whether the doctrine of laches acts to preclude an offeree from accepting an offer when such offer was made over nine years before the attempted acceptance.

3.  Whether the doctrine of laches acts to preclude a party to a bilateral contract from demanding performance of the second part of a two-part contract where the contract was entered into over nine years before the demand for performance and where the first part of the contract was completed over eight years before the demand for performance.

4.  Whether nine years is a reasonable amount of time to accept an offer to perform construction work where the cost of materials necessary to perform such work has increased by 332%.

5. Whether the Chancery Court was correct in awarding Judgment to the Plaintiff-Appellees where the only remedy sought by the Plaintiff-Appellees, specific performance, is unavailable as a matter of law.

Avery contends that the appeal is frivolous and seeks an award of costs and fees related to the appeal.

## II.    STANDARD OF REVIEW

This case was resolved on cross motions for summary judgment. A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party seeking summary judgment "bears the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Armoneit v. Elliot Crane Service, Inc.*, 65 S.W.3d 623, 627 (Tenn. Ct. App. 2001). Our standard of review for summary judgment is *de novo* with no presumption of correctness as the resolution of a motion for summary judgment is a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008). We take the strongest view of the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey*, 90 S.W.3d at 695.

The interpretation of written agreements, as is at issue in this case, is also a matter of law that we review *de novo*. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (citing *Guiliano v. Cleo*, 995 S.W.2d 88, 95 (Tenn. 1999) and *Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993)); *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005).

## III.    ANALYSIS

### A.    Construction and Interpretation of the Contract

Ascertaining and giving effect to the parties' intent is of utmost importance when interpreting a written contract. *Allstate*, 195 S.W.3d at 611 (citing *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005)). Courts look to the plain meaning of the words used in the document to determine the parties' intent. *Allstate*, 195 S.W.3d at 511. If the words used in a contract are clear and unambiguous, the literal meaning of the words used controls the interpretation. If the contractual language can be understood in more ways than one, however, the contract will be deemed ambiguous and a court will consider parol evidence to guide it in construing the document. *Id.* at 611-12. The parol evidence the court will consider includes the parties' conduct and statements regarding the meaning of the disputed portion(s) of the contract. *Id.* at 612 (citing *Memphis*

*Housing Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001) and *Vargo v. Lincoln Brass Works*, 115 S.W.3d 487, 494 (Tenn. Ct. App. 2003)).

Avery contended that the language of the contract called for the paving to be done in two phases, that there was no time set for performance of the second phase, and that Highway breached the contract when it refused to complete the second phase upon Avery's request. Consistent with the denial of the existence of a contract in its answer, Highways argued in its motion and on appeal that it sent Avery two offers, each covering one phase of the paving, and that Avery only accepted one offer. As each party has a different interpretation of the contract, in resolving this matter we first look to its language.

The parties agree that the document at issue is the document labeled "Contract" dated September 18, 2003. With respect to the work to be done by Highways, the specific language at issue provides:

> Item No. 1 – Base and Paving
> > Items include:
> > > Approx. 4310 SY of Paving
> > > 6" of Base
> > > 2" B-M Binder
> > > Tack Coat
> > > 1.5" of "E" Surface Mix
> > > Approx. 189 SY for Concrete Entrance
>
> Item #1 Total - $46,000

Avery argues that this language evidences a single contract for work that is to be performed in two phases. Highways, however, argues that the language sets forth two separate offers, one for the base concrete layer and the other for the top "E" surface layer; that its quote to Avery for the top "E" surface expired before Avery attempted to accept it, and that consequently, the top "E" surface layer was not a part of the contract.[3]

---

[3] At various times Highways refers to the work it was to perform as "Item 1" and "Item 2". Attached as Exhibit 1 to Highways' Statement of Undisputed Facts was an unsigned letter dated July 24, 2003, from Blake Mayo, Highways' estimator, quoting two items as follows:

> Item No. 1 – Base and Paving
> > Items include:  Approx. 4310 SY of Paving
> > > 6" of Base
> > > 2" B-M Binder
> > > Tack Coat
> > > 1.5"of "E" Surface Mix
> > > > Item #1 Total - $41,860.00

We agree that the language establishes one offer, containing a single item, including both the base layer of paving as well as the top "E" surface layer. The price for "Item No. 1 – *Base and Paving*" (emphasis added) is fixed at $46,000 and the price is not apportioned to the materials listed; those materials include both 6" of Base and 1.5" of E Surface Mix. The remainder of the contract includes no contrary provisions. This language is clear and unambiguous; therefore we need not look further.

There is no issue that Avery accepted the September 18, 2003 offer[4] and we agree with the trial court's determination that that Avery and Highways entered into a contract

---

Item No. 2 – Extruded Concrete Curb
Items Include:    Approx. 2800 LF of Extruded Curb @ $2.55/LF
Item #2 Total - $7,140.00

Exhibit 2 to the statement of undisputed facts was a letter dated August 28, 2003 from Mr. Mayo to Ms. Vaden enclosing a quote showing a $1,560.00 deduction in the contract price for an area that was to be paved in concrete rather than asphalt, thereby reducing the contract amount to $40,300.00. Exhibit 4 is a letter from Mr. Mayo to Ms. Vaden dated September 18, 2003 enclosing a new contract "with the updated square yardage of paving, the deduction for the concrete entrance and 3" of base stone to be put down in the concrete paving section." Exhibit 4 includes a cost breakdown as follows:

Original Contract:      $41,860.00
Deduct for Entrance     -$1,560.00
Additional Paving &
   Stone for Entrance     $5,700.00

New Total               $46,000.00

In its brief on appeal, Highways refers to an "Item 2" as "install one and one-half inches of asphalt topping"; in the memorandum it filed in support of the summary judgment motion Highways referred to "Item 2 work" as "the placement of top coat." From the foregoing it is clear that the September 18, 2003 contract did not include an "Item 2" and that the paving at issue in this case was the 1.5" of "E" surface mix which was a part of "Item 1".

[4] In pertinent part, paragraph 2 of Avery's statement of material facts, filed in support of its motion for summary judgment, states:

2. The September 18, 2003 contract was signed and accepted by Bettye Vaden and returned to Highways, Inc. (See Affidavit of Bettye Vaden).

The pertinent portion of Ms. Vaden's affidavit states:

. . . On September 18, 2003, Highways, Inc. prepared a letter bearing the signature of Blake Mayo on behalf of Highways, Inc. This letter identified the changes in the quotation, and carried with it as an enclosure a written contract, bearing the same date, September 18, 2003. In fact, the cover letter enclosed two copies of the contract, presumably for my convenience, and stated: "Please sign and return one copy of the enclosed contract and keep one for your records." Both copies of the contract bore the signature of Mark Odom, Vice President of Highways, Inc. I followed the instructions

in which the work was to be performed in two phases. As neither party disputes that Highways failed to complete the second phase of paving after Avery's request, we proceed to address the defenses raised by Highways.

## B. Laches

"[Laches] is an equitable defense which requires the finder of fact to determine whether it would be inequitable or unjust to enforce the claimant's rights." *Finova Capital Corp. v. Regel*, 195 S.W.3d 656, 660 (Tenn. Ct. App. 2005) (citing *Gleason v. Gleason*, 164 S.W.3d 588, 592 (Tenn. Ct. App. 2004)). Where a defendant asserts an affirmative defense, such as laches, as the basis of its entitlement to summary judgment, the defendant bears the burden of alleging undisputed facts that show the existence of the affirmative defense. *Chambers v. Illinois Cent. R.R. Co.*, No. W2013-02671-COA-R3-

---

contained in the letter and signed the first copy of the enclosed contract and delivered it to Blake Mayo of Highways, Inc. and retained the second copy for my records. A true and accurate copy of the September 18, 2003 letter is attached hereto as Exhibit A. A true and accurate copy of the second copy of the September 18, 2003 contract, which I was to keep for my records, is attached hereto as Exhibit B. Highways, Inc. received the fully executed contract, and to the extent they have failed to preserve it or keep it, they bear 100% of the responsibility for that failure. The text of the second copy, set forth as Exhibit B, is identical to the fully executed copy which was returned to Highways, Inc. at their instruction and request. The text of the contract attached as Exhibit B contains the written agreement between the parties.

Highway's response to Avery's statement of material facts states, in pertinent part:

RESPONSE: Disputed. Highways is unable to locate a fully-executed version of the September 18, 2003 contract. (Mark Odom Aff. 9-12).

The portions of Odom's affidavit to which Highways cites in its response provide:

9. Highways does not have a copy of a fully-executed written contract with Bettye Vaden.

10. Highways does not have a copy of a fully-executed written contract with Avery Place, LLC.

11. It is the document retention policy of Highways to dispose of business documents which are dated more than five years.

12. The contract and documents pertaining to the Avery Place project have been disposed of and destroyed in accordance with Highways' document retention policy.

The fact that Highways did not have a fully executed contract does not rebut Ms. Vaden's statement that she signed the contract and delivered it to Blake Mayo of Highways.

CV, 2015 WL 2105537, at *3 (Tenn. Ct. App. 2015) (citing *Hannan v. Altel Publishing Co.*, 270 S.W.3d 1, 9 n.6 (Tenn. 2008)).[5] As noted in *Brown v. Ogle*:

> The defense of laches is based on the doctrine of equitable estoppel, and is only applied where the party invoking it has been prejudiced by the delay. The defense of laches presents a mixed question of law and fact. Two essential elements of fact are negligence and unexcused delay on the part of the complainant in asserting his alleged claim, which result in injury to the party pleading laches. The question whether in view of the established facts, relief is to be denied—that is, whether, it would be inequitable or unjust to the defendant to enforce the complainant's right—is a question of law.

*Brown,* 46 S.W.3d 721, 726 (Tenn. Ct. App. 2000) (internal citations omitted). We review the trial court's decision regarding whether to apply the doctrine of laches under the abuse of discretion standard. *Grand Valley Lakes Prop. Owners Ass'n, Inc. v. Burrow*, 376 S.W.3d 66, 83-84 (Tenn. Ct. App. 2011).

Highways makes alternative arguments in support of its contention that laches bars Avery's claim. First, predicated on its contention that there was no contract for the second phase but only an offer, Highways argues that laches bars Avery from accepting the offer which had been made nine years previously. Second, Highways contends that "[Avery] unreasonably and inexcusably delayed asserting their demand for performance and such delay has severely prejudiced Highways," and that, as a result, laches applies to bar this action.

---

[5] Footnote 6 of *Hannan* clarifies the parties' respective burdens and the burden-shifting framework for a motion for summary judgment:

> These are the two burden-shifting methods available to the moving party when the moving party does not bear the burden of proof at trial. The burden-shifting analysis differs, however, if the party bearing the burden at trial is the moving party. For example, a plaintiff who files a motion for partial summary judgment on an element of his or her claim shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law. Similarly, a defendant asserting an affirmative defense, such as laches, shifts the burden of production by alleging undisputed facts that show the existence of the affirmative defense. *Hannan*, 270 S.W.3d at 9 n.6.

The Tennessee Supreme Court recently overruled the *Hannan* burden-shifting framework for motions for summary judgment where the moving party *does not* bear the burden of proof at trial. *Rye v. Women's Care Ctr. of Memphis, MPLLC,* No. W2015-00236-COA-R3-CV, 2015 WL 7720378 (Tenn. 2015). Though the *Rye* opinion contains the full text of the *Hannan* footnote quoted above, the Court's holding does not specify any change to the framework where the moving party *does* bear the burden of proof, as Highways does in this case as to the affirmative defense of laches.

Our holding, *supra*, that there was one offer from Highways which was accepted by Avery rather than two offers, only one of which was accepted, disposes of the first argument. To address the second argument, we look to the material filed by Highways' in support of its motion and in opposition to Avery's motion for evidence in support of this contention.

In support of its motion for summary judgment, Highways filed the affidavit of Mark Odom, who signed the contract as Vice President of Highways, and a statement of undisputed facts. Odom's affidavit details the history of communications between Highways and Avery leading to the September 18, 2003 contract and states that: in March 2004, Highways submitted another quote for "additional base stone and paving at the entrance of the project"; the "Item 1" work, consisting of installing the asphalt base, was completed in April 2004; "it was anticipated that Highways would complete the 'Item 2' work after the subdivision was further developed"[6]; a history of the work completed by Highways, noting that after April 2004, "Highways was never called on to return and do any additional work including, without limitation, the 'Item 2' work."[7] Highways statement of material facts consists of 17 paragraphs, each corresponding and virtually identical to paragraphs in Odom's affidavit, and attaches five exhibits of estimates and correspondence sent from Highways to Avery.[8] In relevant part, Highways' responses to Avery's statement of material facts provide the following:

> 12. Plaintiffs requested the installation of the 1.5 inches of "E" surface mix. (Affidavit of Bettye Vaden).
>
> RESPONSE: Undisputed, for purposes of summary judgment, that Mrs. Vaden requested in "late October or early November of 2012" that Highways perform work which was quoted in September of 2003 when such quote expired thirty days after it was provided. (Bettye Vaden Aff. P. 2).

As noted earlier, the trial court held that laches did not apply because the facts put forth by Highways did not show that Ms. Vaden was negligent in any respect, an essential element of a claim of laches. Upon our review, we agree that none of the matters set forth in Odom's affidavit, Highways' statement of material facts, or its responses to Avery's statement of material facts are evidence of negligence on the part of Avery in bringing its claim.

---

[6] As noted *supra*, footnote 3, the September 18, 2003 contract does not contain an "Item 2".

[7] Odom's affidavit defines "Item 2" as "extruded concrete curb." This statement is contradicted by Highways response to paragraph 12 of Avery's statement of material facts, *infra*.

[8] Exhibits 1-4 are discussed in footnote 3, *supra*. Exhibit 5 is a letter dated March 23, 2004, from Mr. Mayo to Ms. Vaden quoting a price for additional base stone and paving at the entrance to the subdivision.

10

Highways' contention that Avery delayed in calling for the completion of phase two is based on the argument that laches should be measured from the time phase one was completed. However, as found by the trial court, the breach occurred in 2013 when Avery requested Highways to complete phase two of the paving at the original price and Highways refused. A mere hiatus in seeking performance of a contract – here, one which did not have a stated term or deadline for performance – does not equate to negligence in seeking to enforce the right to recover for breach of the contract.

"A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005)). There is no evidence that Avery acted negligently in bringing its claim; to the contrary, once it became clear that Highways would not do the second phase of paving at the contract price, Avery brought suit within one year. While the evidence shows that the fact that Avery did not request Highways to complete the paving until 2012 increased the cost of the paving, the evidence also shows that Highways prepared the contract and, as noted by the trial court, failed to include a provision to address this eventuality. The court did not apply an incorrect legal standard, reach an unreasonable decision or erroneously assess the evidence.

C. **Remedy**

Citing testimony from Ms. Vaden's deposition, Highway contends that the trial court erred in awarding judgment to Avery because Ms. Vaden testified that the only remedy she sought was for specific performance, which was unavailable as matter of law.[9]

---

[9] Ms. Vaden testified as follows:

Q. If you look at three, it talks about monetary judgment not to exceed 50,000. What is it you're asking for in this lawsuit?
A. What I'm asking for in this lawsuit is for Highways to complete the work that was indicated in this contract.
Q. Okay.
A. Which is the top layer of asphalt.
Q. So you want them to come out and perform the work?
A. I want them to do the work. I don't want money.
Q. You don't necessarily want a pot of money to do it?
A. No. I want no compensation, no nothing. I just want them to finish the work. (Vaden Depo. 38:10-25).

It is well established in Tennessee law that remedies available for breach of contract include damages, specific performance, and restitution. *Chambliss, Bahner and Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn. Ct. App. 1975) (citing Corbin on Contracts (1964 ed.), § 1102). Specific performance is an equitable remedy generally available when monetary damages are inadequate to provide the party with relief. *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979).

In the complaint Avery sought, *inter alia*, a declaratory judgment that the contract was breached, a monetary judgment in an amount "not to exceed $50,000", and specific performance. In the memorandum of law filed in support of its motion for summary judgment and in opposition to Highways' motion for summary judgment, Avery requested that the trial court "award judgment in favor of Plaintiff in the amount of $29,800." The record is clear that Avery sought remedies in the alternative and there is no evidence from which to conclude that Avery withdrew its claim for damages. The trial court did not err in awarding Avery a monetary judgment of $29,200.

### D. Damages for a Frivolous Appeal

We next address Avery's request that this court find Highway's appeal frivolous and award Avery attorney's fees and costs. This court is authorized to award just damages against the appellant if we determine the appeal is frivolous or that it was taken solely for delay. Tenn. Code Ann. § 27-1-122. The decision to award such damages rests in the discretion of this court. *Chiozza v. Chiozza,* 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). The statute, however, is to be interpreted and applied strictly to avoid discouraging legitimate appeals. *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2004); *see Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977) (discussing the predecessor of Tenn. Code Ann. § 27-1-122). A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. *Wakefield*, 54 S.W.3d at 304.

Upon review of the record, we do not find this appeal so devoid of merit as to justify an award of damages against Highways for filing a frivolous appeal.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

12